**SIGNED THIS: May 12, 2011**

_____
THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RONALD G. STEWART and | ) | No. 10-81979 |
| DEBRA A. STEWART, | ) | |
| | ) | |
| Debtors. | ) | |

## O P I N I O N

Like many states, Illinois provides its citizens an exemption in proceeds from the

sale of a homestead.  It is an "expiring" exemption good for one year after receipt of the

proceeds the purpose of which is to permit the proceeds to be reinvested in a new home.

One question presented is whether a debtor who claims the exemption in homestead

proceeds must intend to reinvest the proceeds in another home.  The Court holds that he

does not have to prove such an intent to assert the exemption.  The second question

presented is whether a debtor who files bankruptcy during the one-year period has an

unconditional entitlement to exempt segregated homestead proceeds notwithstanding a

subsequent failure to reinvest the proceeds in a new homestead.

This second issue, although a narrow one, is an example of the broader and important question of incorporating and applying state law in bankruptcy cases. In opt-out states where property exemptions are controlled by state law, the bankruptcy court is to apply each exemption and all of its terms and conditions exactly as state law provides. Based on this principle, the Court holds that the reinvestment condition remains operative in bankruptcy so that the exemption is properly denied if the proceeds are not reinvested in a homestead within the one-year period dictated by the state statute.

## FACTUAL BACKGROUND

Ronald and Debra Stewart (DEBTORS) jointly owned and lived in a home in Edwards, Illinois, as their marital homestead for eighteen years. In early 2010, they agreed to sell the home to a church for a gross price of $285,595. The sale closed on March 1, 2010.

After payment of their mortgage balances and closing costs, the DEBTORS were due the sums of $53,636.62 in net sale proceeds and $3,437.59 as an escrow account refund on their first mortgage. After a short delay for processing, the DEBTORS received an escrow refund check dated March 25, 2010, in the expected amount of $3,437.59. The DEBTORS held the check and never cashed or deposited it.

At the DEBTORS' request, the net sale proceeds were not disbursed at closing but continued to be held by the disbursing bank pending instructions from the DEBTORS. Over the next few weeks, a portion of the proceeds was released for the payment of certain debts of the DEBTORS, including a substantial tax liability to the IRS. Finally, on May 22, 2010, the bank issued a check in the amount of $22,081.89, the full remaining balance of the sale proceeds. Like the escrow refund check, the DEBTORS neither cashed nor deposited it.

The DEBTORS moved into a rented apartment on a one-year lease. On June 21, 2010, they filed a Chapter 7 petition, properly disclosing the prepetition sale of the house and the two uncashed checks. They also scheduled a certificate of deposit in the amount of $50,000 describing it as "proceeds of sale of home, which Debtors intend to reinvest in a new homestead," claiming $30,000 of it exempt under the Illinois statute that exempts homestead sale proceeds. The escrow refund check was claimed partially exempt under the Illinois "wild card" exemption provision. No exemption was claimed in the $22,081.89 sales proceeds check.

The Chapter 7 Trustee, Charles E. Covey (TRUSTEE), objected to certain exemption claims and moved for an extension of the deadline for him to object to the DEBTORS' discharge. Without objection, an order was entered granting the TRUSTEE an indefinite extension. The claimed exemption in the certificate of deposit was denied after the DEBTORS conceded it could not be traced to the proceeds from sale of the house.

On November 12, 2010, the DEBTORS filed an amended schedule C claiming both the escrow refund check and the sale proceeds check as exempt under the homestead proceeds exemption. The TRUSTEE objected on the basis of the expiring nature of the exemption, contending that he is entitled to both checks unless the DEBTORS reinvest the proceeds in a new homestead by March 1, 2011, the anniversary of the closing. The issue was tried on February 15, 2011.

Ronald Stewart (RONALD), the only witness, testified that he and his wife hoped to use the sale proceeds to purchase another home. They have not done so to date because their discharge has not yet been granted and he is concerned about trying to obtain a loan

while in bankruptcy.  He testified to having that same intent ever since the sale.  RONALD

admitted to neither retaining a realtor nor taking any other steps toward a purchase.  The

one-year period for reinvestment has now expired without the funds having been

reinvested in a new homestead.

## ANALYSIS

### A.  Escrow refund is not exempt.

The Court agrees with the TRUSTEE that the proceeds exemption does not cover the

escrow account refund.  To be "proceeds," funds must be traceable to the consideration

paid by the purchaser.  Only the $22,081.89 check is proceeds from the sale of the house.

The smaller check for $3,437.59 represents a refund from the mortgage company or servicer

for an overage in funds paid in by the DEBTORS for the payment of real estate taxes and

insurance premiums.  The Court holds that the escrow refund check is not "proceeds" from

the sale of the house and is not eligible for the homestead proceeds exemption.

### B.  The state statute, in context.

Initially, it is important to recognize the context of the homestead proceeds

exemption.  In construing a statute, a court should look to the provisions of the whole law,

and to its object and policy.  *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 1555

(1987).  When interpreting a particular section of a statute, courts should look to the entire

statutory scheme rather than simply examining the text at issue.  *Dodd v. U.S.,* 545 U.S. 353,

370 n.10, 125 S.Ct. 2478 (2005).  The relevant context of a statutory provision includes not

only its language and related provisions, but also the "real-world situation" sought to be

addressed.  *Matter of Handy Andy Home Improvement Centers, Inc.,* 144 F.3d 1125, 1128 (7th

Cir. 1998).

Article XII of the Illinois Code of Civil Procedure, 735 ILCS 5/12-101 *et seq.*, dealing with judgments and their enforcement, is divided into 14 parts.[1] Part 10 addresses exemptions of personal property while the exemption of homestead is addressed in Part 9. The homestead exemption provisions of Part 9 include 13 sections. Section 12-901 states the primary exemption of homestead in value of $15,000 for a sole owner, $30,000 for joint owners, of property owned and occupied as a residence.[2] 735 ILCS 5/12-901. The exemption in proceeds is provided in section 12-906, as follows:

> When a homestead is conveyed by the owner thereof, . . . the proceeds thereof, to the extent of $15,000, shall be exempt from judgment or other process, for one year after the receipt thereof, by the person entitled to the exemption, and if reinvested in a homestead the same shall be entitled to the same exemption as the original homestead.

735 ILCS 5/12-906.

A couple of preliminary observations need be made. First, even though the proceeds are personal property, the exemption provision appears in the part of the code dealing specifically with the homestead exemption, not the part that provides the general personal property exemptions. Second, though not expressly made a condition of the exemption, the homestead proceeds must remain segregated from other funds or at least

---

[1] Illinois is one of numerous states that have chosen to opt out of the federal bankruptcy exemptions and require its residents to use the state's exemptions in bankruptcy cases as permitted by section 522 (b)(2) of the Bankruptcy Code. *Clark v. Chicago Mun. Emp. Credit Union,* 119 F.3d 540, 543 (7th Cir. 1997).

[2] As of January 1, 2006, the Illinois homestead exemption amount was doubled from $7,500 to $15,000 for an individual owner. Where the property is owned by 2 or more individuals, an aggregate exemption amount of $30,000 is allowed, to be divided ratably among the joint owners. 735 ILCS 5/12-901. There is no dispute that the DEBTORS, as joint owners, are entitled to a maximum homestead exemption of $30,000, and that this amount applies to the proceeds of sale.

identifiable.  The issue is one of traceability.[3]  *In re Snowden,* 386 B.R. 730, 732 (Bankr.C.D.Ill.

2008) (Gorman, J.).  Tracing of commingled funds can be tricky as different accounting

rules may be used, such as "first in, first out" or the "lowest intermediate balance" rule.  *See*

*C.O. Funk & Sons, Inc. v. Sullivan Equipment, Inc.,* 89 Ill.2d 27, 31-32, 431 N.E.2d 370 (1982);

*Thrall Car Mfg. Co. v. Ward,* 165 Ill.App.3d 737, 743, 520 N.E.2d 729 (Ill.App. 1 Dist. 1987).

Since the DEBTORS never deposited the proceeds check, the TRUSTEE concedes that the

check represents segregated funds and tracing is not an issue.

## C.  *Ziegler, Snowden* and *Lantz.*

The first issue, a state law one, is whether the proceeds are exempt only if the debtor

intends to reinvest the proceeds in a new homestead.  The statute makes no reference to

state of mind, but such a condition could be implied.  If so, does the intent need to be

continuous and uninterrupted or need it only be present on the petition date?

The issue is not unique to Illinois.  A similar implied intent requirement has been

judicially created in Florida, but not in Arizona or California.  *See In re White,* 377 B.R. 633,

644-45 (Bankr.D.Ariz. 2007), *aff'd,* 389 B.R. 693 (9th Cir.BAP 2008).  *Cf. In re Marriott,* 427

B.R. 887, 893 (Bankr.D.Idaho 2010) (in Idaho, to be exempt, the debtor must intend to use

the proceeds to acquire a replacement homestead, or at least keep the funds identified and

segregated in order that such a possibility has not been foreclosed).

As a matter of first impression, the bankruptcy court in *In re Ziegler,* 239 B.R. 375

(Bankr.C.D.Ill. 1999) (Altenberger, J.), held that an intent to reinvest the proceeds in a new

---

[3]The condition that the proceeds be traceable to the homestead is an implied condition.  By way of comparison, in the general provision listing personal property exemptions, the legislature made exempt "the debtor's right to receive, or property that is traceable to" certain awards of money or other payments.  735 ILCS 5/12-100(h).

homestead is an implicit condition of the proceeds exemption.  This Court followed *Ziegler*

in *In re Sizemore,* 2001 WL 34079528 (Bankr.C.D.Ill. 2001).  The DEBTORS invite the Court

to reconsider the issue.

  In *Snowden,* Judge Gorman questioned the intent requirement recognized in *Ziegler*,

but declined to decide the issue since the debtor's testimony established an intent to

reinvest the proceeds in a new homestead.  The issue under the Illinois statute has not been

addressed by the Illinois Supreme Court, the Seventh Circuit Court of Appeals or any

federal district court.

  Recently, however, Bankruptcy Judge Manuel Barbosa issued his opinion in *In re*

*Lantz,* --- B.R. ----, 2011 WL 843953 (Bankr.N.D.Ill. 2011), disagreeing with *Ziegler* and

holding that section 12-906 should not be construed to contain the implicit condition that

the debtor have an intent to reinvest the proceeds in a new homestead.  Judge Barbosa

relied on the absence of the condition in the statutory language itself and the fact that no

Illinois court has implied such a condition.  He relied on the principles of construction that

favor the literal interpretation of unambiguous statutes, that disfavor implied conditions,

and the principle that exemption statutes should be liberally construed in favor of debtors.

Judge Barbosa reasoned that while the purpose of the statute is to protect the proceeds for

up to one year in order to give the former homeowner time to decide whether to purchase

a new home and to close the purchase, the exemption is not conditioned on reinvestment.

*Lantz* holds that homestead proceeds are exempt for one year even without an intent to

reinvest.

Upon considered reflection, although not without continued appreciation for Judge Altenberger's reasoning, as explained below, this Court now agrees with Judge Barbosa that an intent to reinvest should not be implied as a condition of the exemption.  Focusing on the debtor's intent is unnecessary and serves to distract from the larger issue of whether the proceeds exemption may, and should, be applied in a bankruptcy case the same way and with the same effect that it would be applied outside of bankruptcy.  It may and it should.

**D.  The purpose of the proceeds exemption**.

A full understanding of the purpose for the proceeds exemption is the starting point. It is, after all, the cardinal rule of statutory construction, to which all other rules are subordinate, to ascertain and give effect to the legislature's intent.  *People v. Hanna,* 207 Ill.2d 486, 497, 800 N.E.2d 1201 (2003).   Despite reaching contrary results, Judges Altenberger and Barbosa are in basic agreement that the purpose of the temporary exemption for proceeds from the sale of one's homestead is to protect and preserve the homestead exemption itself.  More specifically, it is to preserve the equity value that the homeowners built up in the first home, to the extent of the maximum amount of the exemption.  That equity value may serve as a down payment to facilitate the purchase of a new home or may at least be rolled over into the new home where it will continue to remain exempt.

Illinois courts have not construed the proceeds exemption as a stand-alone exemption to be interpreted in a vacuum.  It is inextricably tied to the primary homestead exemption and has been interpreted in that context.  This point is made in a matter-of-fact

8

manner in *People v. Stitt,* 7 Ill.App. 294, 1880 WL 10400 (Ill.App. 2 Dist. 1880), a case

discussed in both *Ziegler* and *Lantz.*

In *Stitt,* the court went beyond the literal language of the statute to extend the

proceeds exemption to the circumstance involving an involuntary sale, in furtherance of

the underlying purpose of the provision, reasoning as follows:

> It is claimed that section six of the statute only exempts the proceeds
> of the sale of the homestead to the extent of $1,000, where the owner himself
> makes the sale, and this exemption shall continue for one year.  This is the
> language of that section, and in its literal terms would not apply to any case
> except where the owner himself makes the sale, and would not apply in a
> case where the homestead premises were sold under sections eight, and ten,
> eleven and twelve.  In the eighth section it is provided, that in the
> enforcement of a lien in a court of equity upon premises including the
> homestead, if such right is not waived or released, the court may * * * if the
> value of the premises exceed the exemption, and the premises cannot be
> divided, order the sale of the whole, and the payment of the amount of the
> exemption to the person entitled thereto, and a similar provision is found in
> sections eleven and twelve.  In neither of these sections is it provided that the
> money shall be thereafter exempt.  But can it be doubted that the money
> would be, for at least one year, the same as in section number six; otherwise
> there would be no protection for the homestead right in case of sale.

> In section seven it is provided that wherever a building exempt as a
> homestead is insured in favor of the person entitled to the exemption, and a
> loss occurs entitling such person to the insurance, such insurance money
> shall be exempt to the same extent as the building would have been had it
> not been destroyed.  Yet it would not be supposed that this meant an
> unlimited exemption in time.

> It will be seen by this that it was the intention of the legislature to
> protect a party in his homestead, and in case he sold it himself, or it was sold
> by any legal agency in order to satisfy debts, make partition, or for other
> causes, the money received in exchange for the homestead should also be
> exempt until, at least, it could be re-invested according to the statute.

*Stitt,* at *4.

After citing *Stitt* for the proposition that the "aim of § 12-906 is to protect the

proceeds from the sale of a homestead until they can be reinvested in another," Judge Altenberger reasoned that § 12-906 cannot be viewed as a separate exemption, but rather is a continuation or extension of the primary homestead exemption granted by § 12-901. *Ziegler,* 239 B.R. at 379. *Accord In re Willoughby,* 2003 WL 22849766 (Bankr.C.D.Ill. 2003) (Fines, J.). This Court agrees with that characterization of the proceeds exemption. The function of the proceeds exemption is to bridge the gap between sale of the first home and purchase of the second. It protects the exempt equity value where the sale of the old home and purchase of a new one do not occur simultaneously for a gap period of up to one year.

Implicitly recognizing that moving from one home to another is a process that may occur over an extended period of time, the Illinois Supreme Court has spoken of the proceeds exemption as an extension of the initial homestead exemption that carries it over to the replacement home. *LaPlaca v. LaPlaca,* 5 Ill.2d 468, 126 N.E.2d 239 (1955) (homestead exemption "extends as well to the proceeds of the sale for the period of one year, and to the reinvestment of the proceeds in another homestead"). Other cases recognizing that the proceeds exemption only has a definable purpose in the context of a debtor's transition from one homestead to another include *In re Huddleston,* 2005 WL 2271859 (Bankr.C.D.Ill. 2005) (Fines, J.), *In re Willoughby, supra,* and *In re Wagenbach,* 232 B.R. 112 (Bankr.C.D.Ill. 1999) (Altenberger, J.).

## E. The statute's function guides its interpretation.

In *Ziegler,* Judge Altenberger gave the admonition that, in light of its purpose, the proceeds exemption "should not be interpreted to create an absolute dispensation for former homeowners, increasing the allotted personal property exemption three-fold during

the one-year period following the sale." 239 B.R. at 379.  Despite *Lantz's* holding to the contrary, Judge Altenberger is correct.  The proceeds exemption must be interpreted in light of its object and policy.  If the legislature had intended § 12-906 to create an open-ended exemption in proceeds the use of which was not restricted to homestead purposes, it would not have limited it to one year, a period viewed as a reasonable amount of time to accomplish the purpose of buying a new home, and it would not have capped the exemption at the amount of the primary homestead exemption.

Moreover, if the exemption is not conditioned by its purpose, then why include the ultimate phrase "and if reinvested in a homestead the same shall be entitled to the same exemption as the original homestead"?  That phrase is the clearest indication both of the purpose of the exemption as a bridge between homes and of the nature of the exemption as conditioned upon the use of the funds for that purpose.  To say that the legislature intended the homestead proceeds to be unconditionally exempt for one year so that the funds could be expended for any (nonhomestead) purpose whatsoever, flies in the face of the language of the statute, its purpose as defined by Illinois courts, its location in the statute as part of the homestead exemption law, and its real-world context as a mechanism to facilitate the transfer of exempt equity value from one home to the next.[4]

## F.  Intent need not be implied.

*Ziegler* holds that the proceeds are entitled to protection "only if there is a good faith intent to reinvest the proceeds in another homestead."  On this point, the Court diverges

---

[4]The sole purpose of the exemption is to enable equity value in a homestead to be transferred from one home to another, despite a temporary conversion of that equity into cash proceeds.  As an adjunct to the primary homestead exemption, construing it as a stand-alone personal property exemption would be a mistake.

from Judge Altenberger's otherwise solid reasoning and, instead, agrees with Judge Barbosa that an intent to reinvest is not an element of the debtor's proof under § 12-906. Since this is purely an issue of state law, it is crucial to discern how the issue is or would be addressed by the state courts. The substantive law of the forum state governs issues of state law that arise in bankruptcy proceedings. *In re Chira,* 567 F.3d 1307 (11th Cir. 2009). When a state has opted out of the federal exemption scheme and elected to have its own exemptions applied in bankruptcy cases, the state exemptions should be applied in bankruptcy to the same extent and with the same effect as in state court. *In re Duncan*, 329 F.3d 1195, 1198 (10th Cir. 2003); *In re Colwell,* 196 F.3d 1225 (11th Cir. 1999); *In re Anderson,* 824 F.2d 754, 756 (9th Cir. 1987); *In re Neal,* 344 B.R. 456, 461 (Bankr.W.D.Va. 2004).

The statute focuses squarely, not on what the debtor thinks about or intends to do with the proceeds, but on what the debtor actually does or doesn't do with them. The standard is one of conduct, not state of mind. People are often unsure what to do. They change their mind. Circumstances change. What seems possible one day, appears impossible the next – and vice versa. The real-world wisdom of the statute is that it accommodates these various scenarios. It enables exempt homestead equity to be protected during the process of transferring it from one home to another, despite an interim conversion of the equity from real estate into cash, with only three conditions: (1) the proceeds must remain segregated or at least traceable, (2) the proceeds must actually be reinvested in a new homestead, and (3) the reinvestment must occur within one year.

Intent is not a stated condition and it is not necessary to imply such a condition to

carry out the purpose of the provision. Most importantly, there is no indication that Illinois courts would require the former homeowner to maintain such an intent during the one-year period. But for the exception of waiver, discussed below, the debtor's intent is irrelevant to the exemption in homestead proceeds.

This Court agrees with Judge Barbosa that Illinois courts would not require a debtor asserting the exemption to prove a present or continuous intent to reinvest the proceeds in a new home; the possibility of reinvestment should be sufficient to preserve the option for the full year permitted by the statute. Since the state courts would not require proof of intent, neither should the bankruptcy court, as state law determines the conditions placed on the exemption.

## G. Creditors may be protected without impairing the exemption.

This Court also agrees with Judge Barbosa that, as a general rule, a creditor that levies against homestead proceeds during the one-year period following sale would not be permitted by an Illinois court to obtain the proceeds at that point in time. *Lantz,* at *7. That does not mean, however, that a creditor who levies during the one-year period can never obtain the funds, as the pending exemption is not an absolute "defense." It also does not follow that an Illinois court would deny the creditor any rights should the one-year period expire without reinvestment.

Although not applicable to our facts, there are three apparent exceptions to the general rule that a debtor faced with a creditor's levy gets to hold the funds for the full year to preserve the option of reinvestment. First, the doctrines of waiver and forfeiture apply.

13

"Waiver" is the intentional relinquishment of a known right, whereas "forfeiture" is the failure to make a timely assertion of the right. *Gallagher v. Lenart,* 226 Ill.2d 208, 229-30, 874 N.E.2d 43 (2007). A debtor can forfeit the proceeds exemption outside of bankruptcy by failing to assert it in response to a creditor's levy, and inside of bankruptcy by failing to claim it on the schedule of exempt property. Waiver is also possible. If a debtor declares that he has no intention of reinvesting in a new home, will not change his mind, and does not wish to hold the funds for the one-year period, he has effectively waived the exemption.

Second, the doctrine of impossibility should apply. Circumstances that could render reinvestment within one year impossible by the owner of the proceeds can be readily imagined, including his death, permanent admission into a long-term care facility, and incarceration for a lengthy sentence. Under these circumstances (and perhaps others), a state court could determine that the condition of reinvestment by the former homeowner is impossible to satisfy, and order that the funds be turned over to a levying creditor.

Third, the rule against two homesteads applies. As recognized by Judge Barbosa, a debtor is not entitled to two homestead exemptions, one in the remaining proceeds and one in a new homestead, at the same time. *Lantz,* at *2. *See, also, Matter of England,* 975 F.2d 1168, 1174 (5th Cir. 1992); *Exchange Bank & Trust Co. v. Mathews,* 267 Ark. 415, 418, 591 S.W.2d 354 (1980). The holder of the proceeds could acquire a new homestead, even without using the proceeds, via inheritance, gift, marriage, even winning a drawing for a new home. If so, the state court would order the proceeds from the prior homestead released to a levying creditor.

14

Illinois courts would apply the exemption according to its well-defined but limited purpose and would protect the rights of creditors to the extent not inconsistent with that purpose. To the extent that *Lantz* and *Snowden* suggest that an Illinois court would deny a petition-date levy against homestead proceeds because the proceeds are "exempt" as of that date, the Court disagrees based upon a subtle, but important, distinction. Instead, the final adjudication would be deferred until reinvestment happened or the one-year period expired, whichever occurred first. Until such time, because of the unexpired statutory time period for reinvesting the proceeds, no final determination as to allowance or disallowance of the exemption is possible, since it remains unknown whether or not two of the three statutory conditions will be satisfied. If the question raised by a petition-date levy is "are the homestead proceeds now exempt?", the correct answer is "not yet." Creditors may thus be protected without any adverse effect upon the right of the debtor to hold and reinvest the proceeds within one year, by simply deferring the decision until reinvestment has occurred or the time has elapsed.

## H. Homestead proceeds are property of the estate subject to the trustee's rights.

Apart from what an Illinois court should or might do, bankruptcy subjects a debtor and his property to a set of preemptive federal rules and restrictions. When a debtor files a bankruptcy petition, all his property including property he claims as exempt becomes property of the estate. *Taylor v. Freeland & Kronz,* 503 U.S. 638, 642, 112 S.Ct. 1644 (1992); *In re Robbins,* 187 B.R. 400, 403 (Bankr.D.Mass. 1995). Whether property claimed as exempt remains in the estate to be administered for the benefit of prepetition creditors or passes

15

out of the estate and beyond the reach of those creditors is necessarily determined at some point later than the petition date. Generally, the earliest that such property could leave the estate is 30 days after the conclusion of the meeting of creditors, if no objections to the claimed exemption are filed. *Schwab v. Reilly,* 130 S.Ct. 2652, 2658, 177 L.Ed.2d 234 (2010). Of course, if an objection is filed and litigation ensues, that determination could be delayed significantly.

In addition, it has long been understood that a bankruptcy filing has the force and effect of a creditor's levy and execution with the trustee standing in such creditor's shoes. *Myers v. Matley,* 318 U.S. 622, 627, 63 S.Ct. 780, 87 L.Ed. 1043 (1943); *Hanover Nat. Bank v. Moyses,* 186 U.S. 181, 189-90, 22 S.Ct. 857, 46 L.Ed. 1113 (1902); *In re Herman,* 120 B.R. 127, 130 (9th Cir.BAP 1990). A trustee has all of the rights that a levying creditor would have with respect to property of the estate. There is no reason that a trustee's potential right to administer the proceeds may not remain pending subject to the debtor's right to reinvest the proceeds within one year. If the year expires without reinvestment, the proceeds should be turned over to the trustee. Only in this fashion may the delicate balance between debtor relief and creditor rights be preserved.[5]

## I. Stopping the clock: the snap-shot doctrine and its limits.

Applying the snap-shot doctrine, *Lantz* and *Snowden* hold that the petition serves to forever stop the clock on the debtor's exemption claim so that it must be allowed even if the reinvestment condition later fails. This Court respectfully disagrees. Whether to apply

---

[5]"Bankruptcy law endeavors to strike an equitable balance between the debtors' needs – especially the need for a fresh start – and the creditors' rights. The bankruptcy court must hold that delicate balance steady and true." *In re Carvalho,* 335 F.3d 45, 51 (1st Cir. 2003).

the snap-shot doctrine is a question of bankruptcy law, not state law, which is determined

by the various policies in play.[6]  From this Court's perspective, *Lantz* and *Snowden* do not

give appropriate consideration and weight to two fundamental bankruptcy policies that

favor letting the clock continue to run on the one-year period and allowing or disallowing

the exemption based upon whether or not the proceeds are actually reinvested within that

time period (the conduct specified in the statute).

In the broadest sense, the issue is of the ilk that may be described as calling for a

choice between a uniform federal rule of decision and a non-uniform state law rule of

decision.  Despite the constitutional authority to enact uniform laws on the subject of

bankruptcies, Congress may dispense with uniformity and recognize or incorporate state

law as to particular issues of its choosing.  *Butner v. U.S.,* 440 U.S. 48, 54 n.9, 99 S.Ct. 914,

59 L.Ed.2d 136 (1979); *Schultz v. U.S.,* 529 F.3d 343, 351 (6th Cir. 2008); *Matter of Estate of*

*Medcare HMO,* 998 F.2d 436, 447 (7th Cir. 1993).  When Congress enacts a carve-out for state

law, such as it has for exemptions, bankruptcy courts must recognize the mandate for state

law primacy.  In this Court's view, *Lantz* and *Snowden* err by using a discretionary rule of

bankruptcy jurisprudence, the snap-shot doctrine, to override a specific statutory carve-out

from the constitutional preference for uniformity, that exemptions are to be determined by

state law.

The "snap-shot" doctrine is a well-known bankruptcy principle, calling to mind the

image of a photograph or still-picture where the subject depicted is frozen in time and

---

[6]Statutes frequently require courts to make policy judgments. *Turner Broadcasting System, Inc. v. F.C.C.,* 520 U.S. 180, 207-08, 117 S.Ct. 1174, 137 L.Ed.2d 369 (1997).

17

unchanging.  The snap-shot doctrine provides that the rights of the debtor, and the facts and circumstances that undergird those rights, are locked in as of the petition date.  A bankruptcy filing is a temporal event that serves to divide a debtor's assets, liabilities, financial transactions and transfers between those that exist or occur before the filing and those that come into existence or occur after the filing.  Different treatment is accorded those assets, liabilities, transactions and transfers depending on which side of the line they fall.  For most purposes, it makes sense to use the petition date as the point of separation.

The snap-shot doctrine is not universally applied; sometimes it makes sense, sometimes it doesn't.  For example, although property of the estate is generally determined as of the petition date, certain property acquired by the debtor within 180 days after filing is included.[7]  11 U.S.C. § 541(a)(5).  Certain claims that arise postpetition are treated as if they arose on the petition date.  11 U.S.C. § 502(g), (h) and (i).  Actions to recover preferences and fraudulent transfers have look-back periods of 90 days, 1 year or 2 years. 11 U.S.C. §§ 547 and 548.  The Supreme Court recently rejected a formulaic version of the snap-shot doctrine in favor of the forward looking approach for determining a Chapter 13 debtor's projected disposable income, instructing courts to consider postpetition changes known or virtually certain to occur as of the confirmation hearing.  *Hamilton v. Lanning,* 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010).  The snap-shot doctrine is not a hard and fast rule to be applied in a ham-fisted manner.  It is applied selectively when it makes sense as a matter of policy, and disregarded when competing policies override it.

---

[7]The bankruptcy estate is entitled to postpetition appreciation in the value of property of the estate a portion of which is otherwise exempt.  *In re Gebhart,* 621 F.3d 1206 (9th Cir. 2010); *In re Evenson,* 2010 WL 4622188 (Bankr.E.D.Wis. 2010).

### J.  Postpetition changes or developments.

In support of the snap-shot doctrine, the courts in *Lantz* and *Snowden* rely upon two decisions authored by Bankruptcy Judge Kenneth Meyers of the Southern District of Illinois.  While those decisions are not controversial, their effect is overstated.  *In re Summers,* 108 B.R. 200 (Bankr.S.D.Ill. 1989) is cited for the general proposition that exemptions are determined as of the petition date.  The holding of *Summers,* however, is much narrower.  Judge Meyers was faced with the debtor's argument that an Illinois pension exemption statute enacted after the bankruptcy filing should be available to the debtor.  Construing section 522(b)(2)(A)'s definition of exempt property as property exempt under the law "that is applicable on the date of the filing of the petition," he held that postpetition additions or amendments to state exemption laws do not apply in pending cases; the exemption laws that are in force on the petition date control a debtor's exemption rights.  This holding, correct beyond dispute,  is inapplicable to the case at bar.

*In re Walston,* 190 B.R. 855 (Bankr.S.D.Ill. 1996) is cited for the proposition that "developments" which occur after filing should not impact on the entitlement to an exemption properly claimed at filing.  The debtor, a widow, entered into a contract to sell her home and then filed her Chapter 7 petition three days later.  On schedule C, she claimed her primary homestead exemption under section 12-901 and her deceased husband's exemption under section 12-902. The trustee objected, alleging that because she contracted to sell the house prepetition, she was only entitled to a single proceeds exemption under section 12-906. Finding the doctrine of equitable conversion inapplicable, Judge Meyers allowed the exemptions claimed by the debtor.  Since the conditions for

allowance of the exemptions under sections 12-901 and 902 were satisfied on the petition date, the exemptions were properly claimed and allowed.  The postpetition sale of the home and conversion of the real estate into proceeds did not deprive the debtor of the exemptions to which she was entitled when she filed.  *Walston,* 190 B.R. at 859.

Had the sale of the house closed prepetition, the debtor's exemption rights would have been governed by section 12-906, not 12-901.  *Walston* provides guidance on the issue of when, in the course of selling a home, the proceeds exemption of section 12-906 kicks in and supplants, temporarily, the primary exemption of section 12-901.  A postpetition sale is undoubtedly a significant development that changes the character of the property from real estate to cash proceeds and changes the basis for a debtor's exemption rights from one statutory  provision to another.  The circumstances in the case at bar are distinguishable.

It is not disputed that a postpetition change in the law, as in *Summers,* or postpetition change in the nature or character of the property in question, as in *Walston,* should have no effect on a debtor's exemption rights.  Neither circumstance occurred in the case at bar. The DEBTORS closed on the sale of their home prepetition.  The proceeds were in existence on the petition date and remain in existence to this day in the form of the same undeposited check.  The circumstances haven't changed and there have been no postpetition developments.  The only thing that has occurred is the expiration of the one-year period without reinvestment of the proceeds in a new homestead.  The passage of time coupled with a debtor's inaction is simply not the kind of postpetition development or change of circumstances that justifies invoking the snap-shot doctrine which, as applied, would contravene two other fundamental policies.

**K.  Two competing policies.**

There are two policies vying for primacy with the snap-shot doctrine.  The first, that state law exemptions are to be applied in bankruptcy to the same effect as outside of bankruptcy, derives from a very broad concept.  When addressing an issue that involves state law, bankruptcy courts should ordinarily consider and weigh the constitutional preference for uniformity against the state's interest in having its own laws applied.  *See In re Schafer,*--- B.R. ----, 2011 WL 650545 (6th Cir.BAP 2011) (Michigan law creating bankruptcy-specific exemption determined to be unconstitutional); *In re Whipple,* 417 B.R. 86, 89-93 (Bankr.C.D.Ill. 2009).  Congress could have made the federal exemptions apply to every debtor in every personal bankruptcy case.  It did not.  Instead, it permitted the states to opt out of the federal exemptions in favor of state-created exemptions.

The issue of exemptions is one of the few in bankruptcy where the federal interest in uniformity is expressly subordinated in deference to the state's interest, here the interest in establishing the exemptions that its residents may assert against creditors, both outside of and in bankruptcy cases.  One of the seminal cases adopting state law as the rule of decision in bankruptcy and thus subordinating the goal of uniformity is *Butner v. U.S., supra,* holding that the question of whether a security interest in property extends to rents and profits derived from the property is to be determined by reference to state law. Writing for a unanimous court, Justice Stevens reasoned that since property interests are created and defined by state law, "unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."  *Butner,* 440 U.S. at 55.

By analogy, the same reasoning may be applied here. In the absence of a federal interest that requires otherwise, there is no reason why a homestead proceeds exemption, created and defined by state law, should be analyzed differently simply because the former homeowner is involved in a bankruptcy proceeding. No federal interest requires a different result. The policy expressed in the Bankruptcy Code is that property exemptions for opt-out states are determined by the laws of the state in effect on the petition date, no more and no less. 11 U.S.C. § 522(b)(3)(A). This provision is a clear Congressional acknowledgment and concession that there is no competing "federal interest" that might alter or contradict the state exemption laws.

*Lantz* and *Snowden* are too quick to seize upon the ease and familiarity of the uniform federal rule that the snap-shot doctrine provides. In doing so, those courts give short shrift to the state's interest and fail to give the deference to state law intended by Congress when it expressly carved out an exception to the rule of uniformity for exemptions.[8]

The snap-shot doctrine would defeat the policy of deference to state law by precluding the one-year reinvestment period from having its intended effect. Not enforcing the one-year reinvestment requirement, an integral component of the narrowly targeted proceeds exemption, would dramatically alter its effect, transforming what was intended to be a bridge between homes into an unrestricted exemption for up to $30,000 in cash. Of the three statutory conditions (see section F. above), the latter two would be

---

[8]Neither *Lantz* nor *Snowden* describe their adoption of the snap-shot doctrine as choosing a uniform federal rule of decision and rejecting state law as the rule of decision. It cannot be denied, however, the effect of those decisions is exactly that.

22

eliminated, with only the requirement for segregation or traceability of the proceeds remaining effective. Rather than giving the exemption the same effect in bankruptcy as outside, the elimination of two of its three conditions would render it unrecognizable to its drafters.

Second, a bankruptcy filing necessitates the matching of assets with debts. Prepetition assets are matched with prepetition debts. Bankruptcy courts have the responsibility to allocate assets and liabilities to the correct side of the pre- and post-petition line. *Meyers,* 616 F.3d at 626-27. A Chapter 7 debtor's prepetition assets are administered only for the benefit of his prepetition creditors. In exchange for the detriment of having their claims discharged, prepetition creditors are accorded the benefit of having their claims paid from the debtor's prepetition property, to the exclusion of postpetition creditors. *See In re Tracy,* 28 B.R. 189 (Bankr.D.Me. 1983). Under the Bankruptcy Code, property of the estate is to be construed as broadly as possible for the benefit of prepetition creditors.[9] *Matter of Goff,* 706 F.2d 574, 578 (5th Cir. 1983).

In *Lantz,* the court reasons that applying the snap-shot doctrine does not change the temporary exemption in proceeds into a "permanent" one since only prepetition creditors are adversely affected and postpetition creditors could seek to collect against the proceeds after expiration of the year. *Lantz,* at *7. This Court believes the converse is true. Because the proceeds are unquestionably an asset of the estate, it is the prepetition creditors who have claims to the value of the asset and whose rights are entitled to protection to the

---

[9]This policy is embodied in the concept that property of the estate may include property that a debtor receives postpetition where its origins are sufficiently rooted in the debtor's prebankruptcy past. *See Segal v. Rochelle,* 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) (loss-carryback refund claim "sufficiently rooted in the pre-bankruptcy past" so as to be property of bankruptcy estate).

exclusion of the postpetition creditors.  As applied in *Lantz* and *Snowden,* the snap-shot doctrine prevents the correct matchup of the prepetition asset, the proceeds, with the claims of the prepetition creditors, in violation of one of the fundamental policies of our bankruptcy laws.

Neither is it necessary to use the snap-shot doctrine to fully protect the debtor's exemption rights, which are protected by granting the debtor the unfettered right to reinvest the proceeds during the entire applicable reinvestment period.  The snap-shot doctrine would effectively enhance the exemption.  A bankruptcy filing does not create rights that do not otherwise exist.  *Hillis Motors Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581, 592 (9th Cir. 1993); *In re Salinas,* 258 B.R. 913, 919 (Bankr.W.D.Wis. 2001).  The Supreme Court in *Butner* rejected the minority rule adopted by two circuits, in part because it gave the mortgagee rights that he did not otherwise have under state law, directing bankruptcy courts to "take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued.  This is the majority view, which we adopt today." 440 U.S. at 56.  An Illinois debtor has no "right" that is triggered by filing a bankruptcy petition to eliminate two of the statute's three conditions.  Yet that gift is exactly what the snap-shot doctrine would hand the debtor, at the expense of his prepetition creditors.  A debtor may, and should, be protected to the full extent of the exemption without the snap-shot doctrine.

**L.  *Golden* and *Zibman.***

The only circuit courts of appeal that have addressed similar expiring exemption laws in other states, have both rejected the snap-shot doctrine.  This Court agrees with the

Ninth Circuit's reasoning in *In re Golden*, 789 F.2d 698 (9th Cir. 1986), where the court

rejected applying the snap-shot rule to California's expiring exemption in homestead

proceeds, as follows:

> California law requires reinvestment in order to prevent the debtor
> from squandering the proceeds for nonexempt purposes.  Acceptance of the
> debtor's position would frustrate the objective of the California homestead
> exemption and the bankruptcy act itself, which limits exemptions to that
> provided by state or federal law.  Applying California law, we therefore hold
> that when the debtor fails to reinvest homestead proceeds within a period of
> six months in which the debtor has control of those proceeds, the proceeds
> should revert to the trustee.

*Golden*, 789 F.2d at 700.

The Court also agrees with *In re Zibman*, 268 F.3d 298 (5th Cir. 2001), where the court

rejected application of the snap-shot rule to Texas's expiring exemption in homestead

proceeds.  After reviewing the Supreme Court decisions in *White v. Stump*, 266 U.S. 310, 45

S.Ct. 103, 69 L.Ed. 301 (1924) and *Myers v. Matley*, 318 U.S. 622, 63 S.Ct. 780, 87 L.Ed. 1043

(1943), the Fifth Circuit reasoned:

> *Myers* thus confirms the basic holding from *White v. Stump* that the
> law and facts existing on the date of filing the bankruptcy petition determine
> the existence of available exemptions, but flags the important reminder that
> it is the *entire* state law applicable on the filing date that is determinative.
> Courts cannot apply a juridical airbrush to excise offending images
> necessarily pictured in the petition-date snapshot.
>
> The bankruptcy and district courts did not apply the *entire* Texas law
> that is applicable in the instant case.  Instead, their denial of the Trustee's
> objection to the exemption in the instant case, "freezing" the exemption for
> the proceeds simply because it was in effect at the date the petition was filed,
> effectively read the 6-month limitation out of the statute, and transformed an
> explicitly limited exemption into a permanent one.  This transgresses the
> teaching of *Myers* that the entire state law applicable on the date of filing
> must be considered.

*Zibman,* 268 F.3d at 304.[10]

This Court holds that the snap-shot doctrine should not be applied with respect to Illinois's expiring homestead exemption.  If the proceeds are not reinvested within one year, the exemption expires and is lost by its own terms, notwithstanding the bankruptcy filing, and the proceeds should then be administered by the trustee.[11]  This leads to the related and final issue as to how the identifiable proceeds held by the debtor on the petition date should be protected from dissipation.

**M.  Protecting the proceeds.**

Some courts have struggled to decide whether the homestead proceeds may, and should, be sequestered during the debtor's decision period in order to prevent them from being spent for nonhomestead purposes.  The TRUSTEE was satisfied with the DEBTORS' assurances that they would not spend the proceeds pending a ruling from the Court, so an order of sequestration was never requested here.

A bankruptcy court certainly has the power to order a debtor not to spend homestead proceeds without prior authorization, or even to order turnover of the proceeds

---

[10]Several lower courts in those circuits have rejected the snap-shot rule in the context of an expiring homestead proceeds exemption.  *In re Earnest,* 42 B.R. 395 (Bankr.D.Or. 1984) (Wilhardt, J.); *In re Lane,* 364 B.R. 760, 763 (Bankr.D.Or. 2007) (Perris, J.); *In re Combs,* 166 B.R. 417, 420 (Bankr.N.D.Cal. 1994).  *Contra, In re Harlan,* 32 B.R. 91 (Bankr.W.D.Tex. 1983); *In re Konnoff,* 341 B.R. 28 (Bankr.D.Ariz. 2006), *rev'd,* 356 B.R. 201 (9th Cir.BAP 2006).  This Court agrees with Judge Wilhardt that the requirement to reinvest the proceeds in a new home can be labeled either a condition precedent or a condition subsequent.  *Earnest,* 42 B.R. at 399.  The issue of which label is correct as a matter of state law is a red herring as it does not advance the inquiry and clouds the true issue.  As Judge Wilhardt concluded, whether debtors should be allowed to escape the reinvestment limitation by filing bankruptcy, is a question of bankruptcy policy.  *Id.*

[11]The rule of construction that exemption provisions should be liberally construed in favor of debtors is properly used only as a rule of last resort to resolve a statutory ambiguity.  40 Am. Jur. 2d Homestead § 10 (West 2009).  This Court's decision to reject the snap-shot doctrine is made based upon an evaluation of competing bankruptcy policies.  It is not a question of resolving an ambiguity.  The fact that enforcing the state law according to all of its terms and conditions will lead to a result that may be less debtor-favorable than if the snap-shot doctrine was used is not a valid consideration.

to the trustee for safekeeping.  The Supreme Court in *Butner,* in response to the argument that bankruptcy would delay the enforcement and risk the loss of the mortgagee's interest in rents, suggested that the bankruptcy court could "avoid this potential loss by sequestering rents."  440 U.S. at 56-57.  This power follows directly from the fact that the proceeds, even if claimed as fully exempt, are nevertheless property of the estate.  The court has exclusive jurisdiction over property of the estate. 28 U.S.C. § 1334(e).  Bankruptcy courts may issue injunctions to protect its exclusive jurisdiction over estate property. *Sunshine Development, Inc. v. F.D.I.C.,* 33 F.3d 106, 113 (1st Cir. 1994).  A bankruptcy court has the power to order a debtor not to spend or dispose of property of the estate.  *Matter of Jones,* 966 F.2d 169, 174 (5th Cir. 1992).

Moreover, a debtor has an affirmative duty to turn over to the trustee all property of the estate.  11 U.S.C. § 521(a)(4).  Chapter 7 trustees have the duty to collect and preserve property of the estate.  11 U.S.C. § 704(a)(1).  A trustee may compel turnover of estate property pursuant to section 542 which states that "an entity . . . in possession, custody, or control . . . of property that the trustee may use, sell, or lease . . . shall deliver to the trustee . . . such property or the value of such property."  11 U.S.C. § 542(a).[12]  *In re Burgio,* 441 B.R. 218, 220 (Bankr.W.D.N.Y. 2010).  If property that should have been turned over but wasn't is subsequently spent or dissipated, a trustee may nevertheless recover the "value of such property."  *Matter of U.S.A. Diversified Products,* 100 F.3d 53,56 (7th Cir. 1996); *In re Burke,* 150 B.R. 660, 662-63 (Bankr.E.D.Tex. 1993).  *Cf. In re Markey,* 378 B.R. 594, 611-13 (Bankr.D. Minn. 2007) (discharge revoked where after debtor's claimed homestead exemption was

---

[12]A debtor is an entity for purposes of section 542(a) since the Code defines "entity" to include a "person." *In re Gentry,* 275 B.R. 747 (Bankr.W.D.Va. 2001).

denied, she used the house as collateral for $100,000 loan and then dissipated the loan proceeds).

In light of their obligation under the Bankruptcy Code to surrender (and not dissipate) property of the estate, it is clear that debtors do not have any "right" to spend the proceeds for nonhomestead purposes. *Lantz* suggests that a debtor does have the right to spend the proceeds for other purposes during the one-year period of temporary protection, determining that the purpose of the exemption is either to reinvest in a new homestead "or to at least protect up to $15,000 for a year for the debtors to live off of in temporary housing." *Lantz* at *5. This Court respectfully disagrees. No matter how laudable this alternative purpose might seem, there is no indication that the state legislature or any Illinois court has ever ascribed such a purpose to the statute. For the reasons stated above, all indications are that the statute's sole purpose is to carry the homestead exemption forward into a new home.

*Snowden* suggests that because the Illinois statute sets forth no penalties for spending the homestead proceeds on nonhomestead purposes, debtors are allowed to do so. Outside of bankruptcy, of course, debtors are almost never under court supervision so it may be presumed that such debtors freely spend homestead proceeds however they wish. In light of the clear limited purpose of the proceeds exemption, however, it is doubtful that an Illinois court would authorize such expenditures over the objection of a levying creditor. Notwithstanding the uncertainties about what an Illinois state court might do, once a bankruptcy petition is filed, the Bankruptcy Code defines the rights and obligations of the debtor. Whatever a debtor might have been able to do before bankruptcy, new obligations

28

kick in when a petition is filed that preclude the expenditure of the proceeds for nonhomestead purposes.[13]

Since bankruptcy courts have the jurisdiction and authority to protect the proceeds, the question of when and how to do so is merely a prudential one. Where the debtor gives adequate assurances that he will hold the proceeds and not spend them for nonhomestead purposes, perhaps no action at all is needed. The trustee may prefer to have an order prohibiting such expenditure, for the sake of comfort or to lay the groundwork for a denial or revocation of discharge in the event of unauthorized dissipation. Alternatively, the proceeds may be ordered paid over to the trustee and sequestered so long as it remains clear that the debtor has the absolute right to reinvest the proceeds in a new home within the one-year period. This issue is to be decided on a case-by-case basis.

## N. Conclusion

On the issue of intent, a question of state law, agreeing with *Lantz* and *Snowden,* this Court holds that a debtor claiming the homestead proceeds exemption under 735 ILCS 5/12-906 does not need to establish an intent to reinvest the proceeds in a new home.

On the issue of whether a bankruptcy filing during the statutory one-year reinvestment period mandates allowance of the homestead proceeds exemption without regard to reinvestment in a new homestead, a question of federal bankruptcy law and policy, disagreeing with *Lantz* and *Snowden,* this Court holds that the exemption should be

---

[13]Merely making a claim that property is exempt does not give a debtor free rein to spend or dispose of it or otherwise dissipate its value. Until the trustee's potential right to administer the property is determined, usually through abandonment or expiration of the time to object to claims of exemption, the debtor acts as a caretaker and has an affirmative duty to preserve property of the estate. *In re Price,* 2006 WL 6589883 (Bankr.N.D.Ga. 2006).

allowed if the debtor reinvests the proceeds within the one-year period, but denied if reinvestment does not occur even though this determination must be made based upon what does or does not occur postpetition.

In this case, the one-year reinvestment period has now expired without reinvestment of the proceeds by the DEBTORS in a new homestead. Therefore, the TRUSTEE'S objection will be sustained and the DEBTORS' claim of exemption in the homestead proceeds will be denied.

The Court also holds that the escrow account refund received by the DEBTORS is not "proceeds" from the sale of their home within the purview of 735 ILCS 5/12-906. Therefore, the TRUSTEE'S objection will be sustained and the DEBTORS' claim of exemption in the escrow account refund will be denied.

The DEBTORS will be ordered to turn over to the TRUSTEE the two checks in the amount of $22,081.89 and $3,437.59.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###